**In re Donald E. ARMSTRONG, Debtor.**

**Donald E. Armstrong, Appellant,**

**v.**

**Kenneth A. Rushton, Trustee, Appellee.**

**BAP No. UT–03–061.**

**Bankruptcy No. 00–26592.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 20, 2004.

Submitted on the briefs: *

Donald E. Armstrong, pro se.

Lon A. Jenkins, Mark W. Dykes, Le-Boeuf, Lamb, Greene & MacRae,· L.L.P., Salt Lake City, Utah, for Appellee.

Before NUGENT, BROWN, and McNIFF, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

The debtor Donald Armstrong (Armstrong) appeals the July 28, 2003 Order of the United States Bankruptcy Court for the District of Utah imposing filing restrictions upon him (the "Filing Restrictions Order") pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651(a). Finding no abuse of discretion, we AFFIRM.

As discussed in Section V, *infra,* we also enter, *sua sponte,* filing restrictions conditioning Armstrong's future litigation in this Court.[1]

---

* The Appellant requested oral argument, but after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. On October 3, 2003, the Appellee filed a Motion to Dismiss Appeal and for Sanctions Against Appellant (Motion to Dismiss). In general, the Appellee asserts that this is a frivolous and redundant appeal. By Order entered October 27, 2003, the Appellee's Motion to Dismiss was referred to this panel. In light of this Court's determination to impose

## I. Statement of Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this timely appeal.[2] The parties have consented to this Court's jurisdiction by not electing to have this appeal heard by the United States District Court for the District of Utah.[3]

## II. Standard of Review

We review the Order for an abuse of discretion.[4] We will not disturb the ruling of the bankruptcy court absent "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." [5]

## III. Summary of Case

Donald E. Armstrong is a frequent litigant, not only in the Utah Bankruptcy Courts, but also in the District Courts sitting in Utah and other states, the state courts of Utah and Texas, the United States Court of Appeals for the Tenth Circuit, and this Bankruptcy Appellate Panel. Nearly all of this litigation springs from a decision in a case in Texas state court wherein business interests controlled by Armstrong were found to have charged usurious interest on a promissory note made by Steppes Apartments, Ltd. in violation of the Texas usury laws (the "Texas Modified Judgment").[6] Armstrong appealed this judgment through the Texas appellate courts and, failing at that level, petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court has denied his petition for certiorari.[7]

Nevertheless, Armstrong has repeatedly challenged the Texas Modified Judgment in the bankruptcy court, notwithstanding the Supreme Court's refusal to take his case. In addition, Armstrong has continued his collateral attacks on the Confirmation Order entered in his bankruptcy case on January 31, 2002, even though his appeal of the Confirmation Order is pending before the Tenth Circuit and he has failed to secure a stay of the Confirmation Order pending that appeal.[8] These continued challenges, as well as the staggering quantity of other suits and motions filed by Armstrong, place both the trustee and Steppes in the unfortunate and costly position of continually having to respond, even when the pleadings are repetitive and frivolous.

In response, the trustee filed his Motion for Entry of Order Imposing Vexatious Litigant Filing Restrictions and Other Procedural Limitations on Debtor Donald E. Armstrong (hereafter the "Motion"). Steppes joined in the trustee's Motion but

filing restrictions on Armstrong's future filings in this Court, the Motion to Dismiss is DENIED.

2. 28 U.S.C. § 158(b)–(c)(1); Fed. R. Bankr.P. 8002.

3. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001(e).

4. See Tripati v. Beaman, 878 F.2d 351, 354 (10th Cir.1989) (per curiam).

5. Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir.1994) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553–54 (10th Cir.1991)).

6. See In re Armstrong, 304 B.R. 432 (10th Cir. BAP 2004), and 294 B.R. 344 (10th Cir. BAP 2003), for a detailed recitation of the factual history regarding the Texas Modified Judgment and the events leading to Armstrong's Chapter 11 bankruptcy, as well as proceedings that have taken place in the bankruptcy case.

7. Armstrong's petition for certiorari was denied June 23, 2002.

8. Armstrong v. Rushton (In re Armstrong), No. 02–4101 (10th Cir. filed June 26, 2002).

does not participate in this appeal.[9] The trustee's Motion recited a lengthy list of proceedings to which he and Steppes have been subjected by Armstrong. By July 28, 2003, when the bankruptcy court entered the Filing Restriction Order, and in addition to many matters filed there, Armstrong had filed eighteen civil actions in the United States District Court for the District of Utah, nine actions in this Court, and ten actions before the Tenth Circuit. As the bankruptcy court noted, "[t]hese actions have ranged from appeals, writs of mandamus, and original actions. The essence of these actions has been to collaterally attack the Texas Modified Judgment or the Confirmation Order."[10] Moreover, the bankruptcy court found that Armstrong had sought and obtained the recusal of eleven federal and state judges in various proceedings. Indeed, Armstrong has sued six present or former judges of this Court and has filed judicial complaints with the Tenth Circuit concerning the bankruptcy judge currently assigned to his bankruptcy case as well as two Utah district judges. He has filed motions to recuse *all* of the bankruptcy judges sitting in this Circuit from hearing his case. In short, the federal courts sitting in Utah, the Tenth Circuit, and this Court have been deluged with filings, most of which require Appellee and Steppes to incur the time and expense of responding.

The Filing Restriction Order was entered after hearing which took place on June 23, 2003. Several matters were scheduled for that date, including a hearing on the Motion as well as a hearing on Armstrong's objections to the trustee's settlement and compromise of certain causes of action held by Armstrong's bankruptcy estate.[11] A transcript of the hearing is a part of the record on appeal. It appears that Armstrong failed to file a timely response to the Motion. Instead, after the June 16, 2003, objection deadline had passed, he filed a motion for leave to object out of time and a proposed objection to the Motion, but did not issue a notice of hearing on his motion for additional time. When the bankruptcy judge asked Armstrong why he had failed to make a timely response to the Motion, Armstrong replied that he was out of the state of Utah on June 17 and 18, and overlooked the passage of the deadline on June 16. The bankruptcy court found Armstrong's "excuse" to be legally insufficient and denied his motion for additional time.[12]

At the hearing, the bankruptcy court received into evidence 105 exhibits and heard a brief statement from the trustee's counsel to the effect that those documents, all of which were pleadings and judgments from various courts, represented a sufficient record upon which the bankruptcy court could conclude that Armstrong was a vexatious litigant. The trustee also conceded that he was only seeking filing restrictions in the bankruptcy court. The bankruptcy court then offered Armstrong an opportunity to be heard. Armstrong made the following statement:

9. Joinder, *in* Appellant's Appendix, Ex. 34.

10. Appellant's Appendix, Ex. 1, Order, at 7–8.

11. The bankruptcy court's order approving the settlement and compromise of these claims is the subject of an unpublished opinion in a companion appeal, *Armstrong v. Rushton (In re Armstrong)*, No. 03–059 (10th Cir. BAP May 6, 2004) (McNiff, J.).

12. Armstrong does not appeal the denial of this motion and has not briefed this as an issue on appeal in his initial brief. He has therefore waived this point on appeal. *See Dry v. United States*, 235 F.3d 1249, 1252 (10th Cir.2000).

Well, basically, Your Honor, I think Mr. Jenkins [trustee's counsel] addressed any concern I have that the order can only effect [sic] issues in this Court, and I think there is [sic] due process and all kinds of arguments in defense, but I'm not going to belabor the Court with that today.... Just as long as the order is only relating to what goes on in this Court.[13]

The record reflects that Armstrong expressed no objection to the restrictions so long as the restrictions entered by the bankruptcy court did not apply to his activities and proceedings in other courts.

Steppes's counsel then rose and orally joined in the Motion at which time Armstrong asserted that it would be "unconstitutional" for the court to allow Steppes to deny Armstrong the right to appear and be heard.[14] Thereupon, the court stated it would take the matter under advisement and, on July 28, 2003, the Filing Restriction Order issued, granting the trustee's Motion and imposing various limitations on Armstrong's ability to litigate in the Utah bankruptcy court.

The bankruptcy court's restrictions require Armstrong to include a statement under penalty of perjury in all future pleadings that contains the following information:

(a) the legal basis for the pleading;

(b) the specific factual basis for the pleading;

(c) a statement that the issues raised in the proposed pleading have never been finally disposed of by any federal or state court and are not, to the best of Mr. Armstrong's knowledge, barred by the doctrines of res judicata or collateral estoppel;

(d) a statement that the legal or factual arguments raised by the pleading are not frivolous or made in bad faith; that to the best of Mr. Armstrong's knowledge, they are warranted by existing case law; that the intent of the pleading is not improper and not intended to delay or cause a needless increase in costs or to void the Orders of this Court; and

(e) a statement that Mr. Armstrong will comply with the rules of bankruptcy procedure and the local rules of this Court.[15]

The bankruptcy court further provided in the Filing Restrictions Order that it would screen all such pleadings submitted by Armstrong for compliance with these requirements before allowing them to be docketed. Armstrong timely appealed from this Filing Restrictions Order.

In support of his appeal, Armstrong supplied this Court with an appendix by compact disc containing some 205 documents and lengthy opening and reply briefs.[16] The only documents included in Armstrong's appendix that are relevant *to this* appeal are the Motion,[17] the transcript of

---

**13.** Transcript at 17, l. 18–25, *in* Appellant's Appendix, Ex. 4.

**14.** *Id.* at 19, l. 3.

**15.** Order at 11, *in* Appellant's Appendix, Ex. 1.

**16.** Armstrong's second motion for an extension of time to file his reply brief has been referred to this panel. Armstrong sought an additional 14 days to "rewrite" his reply brief in light of this Court's decision in another one

of his appeals on January 27, 2004, reversing the bankruptcy court's $5,000 sanction as an impermissible criminal contempt order. *See In re Armstrong*, 304 B.R. 432 (10th Cir. BAP 2004). Because the factual findings in that appeal were not disturbed, we see no correlation to the instant appeal, and Armstrong's second motion for extension of time is therefore DENIED.

**17.** Appellant's Appendix, Ex. 33.

the June 23 hearing,[18] and the Filing Restrictions Order.[19] The majority of the documents included in his appendix have nothing to do with the Filing Restrictions Order being appealed here. Among the documents Armstrong included in the appendix are the Texas Modified Judgment (Ex. 5); the Texas Court of Appeals decision on the Texas Modified Judgment (Ex. 9); the Confirmation Order (Ex. 21); a December 1996 transcript of a Texas state court hearing on a motion to modify or motion for a new trial concerning the Texas Modified Judgment (Ex. 22); and the dockets (Ex. 101–145) from numerous, *but not all,* bankruptcy adversary proceedings (7), federal court cases (18), BAP appeals (9), and Tenth Circuit appeals (10). Armstrong's opening brief is 45 pages long. Construed in its best light, no more than 5 pages of this opening brief are devoted to the propriety of the Filing Restrictions Order.[20]

Armstrong raises six points on appeal, summarized below.

1. That the bankruptcy court has stripped Armstrong of his "post-bankruptcy petition rights and assets."

This is a challenge to findings and conclusions made by the bankruptcy court in its Confirmation Order entered January 31, 2002, and is the subject of Armstrong's pending appeal in the Tenth Circuit. This Court is without jurisdiction to address this issue, and it is unrelated to the issue of filing restrictions.

2. That the bankruptcy court lacks the power to sanction Armstrong for pursuing his post-petition rights.

This issue also attacks the Confirmation Order, which has not been stayed pending the appeal.

3. That the bankruptcy court has denied Armstrong his "constitutional, due process, property and access to the courts rights especially without jurisdiction."

This issue is yet another challenge to the Confirmation Order.

4. That Rushton and his attorneys have conflicts of interest that prevent them from acting to affect the estate.

Armstrong raises this same issue in his pending appeal of the Confirmation Order. It is irrelevant to the filing restrictions imposed by the bankruptcy court and was not broached in the bankruptcy court.

5. That Armstrong has been unconstitutionally punished under the Fifth and Eight Amendments by the imposition of excessive penalties as a result of the Texas Modified Judgment.

This is a challenge to the Texas Modified Judgment, which has become a final, non-appealable judgment by virtue of its affirmance by the Texas appellate courts and the Supreme Court's denial of Armstrong's petition for certiorari.

6. That the Bankruptcy Court denied Armstrong's rights to present evidence of the unconstitutional penalties.

This issue is also an attack on the Texas Modified Judgment and the proceedings in Texas state court. There was no such evidentiary ruling by the bankruptcy court at the June 23 hearing on the Motion.

IV. *Analysis and Conclusion*

■ Appellant Armstrong's affinity for vexatious litigation is apparent from even

---

18. Appellant's Appendix, Ex. 4.

19. Appellant's Appendix, Ex. 1.

20. Appellant's Initial Brief at 26–30.

the most cursory review of the record in this and prior appeals. As noted, most of Armstrong's points on appeal are simply repetitive of matters previously brought and disposed of in this Court or others or are the subject of other appeals and we decline to consider them. The only issue here is whether the bankruptcy court abused its discretion when it imposed the filing restrictions referenced in the Order. We AFFIRM because the bankruptcy court had a clear duty to take the necessary actions to regulate Armstrong's access to the court for the good of the parties and court alike. Nothing in the bankruptcy court's Order or the record supporting it suggests even a hint of a "clear error in judgment" or a departure from the "bounds of permissible choice."

Bankruptcy courts have inherent powers to control the course of litigation before them. That power is supplemented by 28 U.S.C. § 1651(a) and 11 U.S.C. § 105(a). As recognized in *Tripati v. Beaman*,[21] a litigant's right of access to the courts is neither absolute nor unconditional. Federal courts have inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions appropriate for the circumstances. While litigiousness itself is not a basis for filing restrictions, abuses of the court system and vexatious litigation may warrant the imposition of filing restrictions and conditions.[22]

Here, the bankruptcy court complied with the law as stated in *Tripati, Winslow,* and *Werner.* As those cases require, Armstrong was afforded a hearing at which he was given an opportunity to present evidence in opposition to the trustee's Motion. Once assured by the bankruptcy court that the filing restrictions would only apply to that court, he essentially acquiesced in them. Moreover, these restrictions do not bar Armstrong's access to the courts. Instead, the restrictions and conditions specified by the bankruptcy court are carefully designed to prevent Armstrong from prosecuting or raising repetitious claims and arguments. The bankruptcy court's findings include an exhaustive list of Armstrong's abusive filings.

The record is more than adequate to demonstrate Armstrong's repeated abuses of the system at great expense and effort to all concerned, and we conclude that the filing restrictions imposed by the bankruptcy court are commensurate with the litigation abuses carried out by Armstrong. The bankruptcy court did not abuse its discretion in granting the Motion and imposing filing restrictions upon Armstrong.

## V. *BAP Filing Restrictions*

An appellate court has the same power under 28 U.S.C. § 1651(a) to enter filing restrictions and enjoin vexatious litigation.[23] This power extends to this Court and may be exercised sua sponte.[24] We now review Armstrong's litigation activity in this Court.

---

**21.** 878 F.2d 351, 352–53 (10th Cir.1989) (per curiam). *See also Cotner v. Hopkins,* 795 F.2d 900, 902–03 (10th Cir.1986).

**22.** *See e.g., Tripati,* 878 F.2d at 353; *Winslow v. Hunter (In re Winslow),* 17 F.3d 314, 315 (10th Cir.1994) (en banc) (per curiam) (repetitive filings attacking a ten-year old state court proceeding); *Werner v. Utah,* 32 F.3d 1446, 1447 (10th Cir.1994) (per curiam).

**23.** *See Johnson v. Cowley,* 872 F.2d 342 (10th Cir.1989); *Tripati,* 878 F.2d at 352.

**24.** *See In re Salter,* 279 B.R. 278 (9th Cir. BAP 2002) (The BAP is a court "established by Act of Congress" and has the right to exercise powers under § 1651(a)); *Werner,* 32 F.3d at 1448–49 (filing restrictions imposed sua sponte); *Winslow,* 17 F.3d at 314 (filing restrictions imposed sua sponte).

The instant appeal is the nineteenth matter filed in this Court by Armstrong including appeals, construed appeals, and applications for writs. The table below shows seventeen of these matters pursued by Armstrong in this Court as appeals or original proceedings.[25] All but one of these matters flow from Armstrong's Chapter 11 bankruptcy case.

| CASE NO. | CASE TYPE | DISPOSITION | DATE | APPELLEES |
|---|---|---|---|---|
| 01–039 | Appeal | Affirmed | 3/28/02 | Rushton, Bailey |
| 02–007 | Appeal | Affirmed | 6/24/04 294 B.R. 344 | Rushton, Steppes Apartments, Ltd. |
| 02–011 | Appeal | Dismissed | 6/04/02 | Rushton, Steppes Apartments, Ltd., Bailey, U.S. Trustee |
| 02–012 | Appeal | Affirmed | 5/09/03 292 B.R. 678 | Rushton, Bailey |
| 02–038 | Construed Appeal | Dismissed | 5/22/02 | Rushton, Steppes Apartments, Ltd., Bailey, U.S. Trustee |
| 02–039 | Construed Appeal | Dismissed | 5/22/02 | Rushton, Bailey, U.S. Trustee, Greenwood Trust, Bank of America, N.A., Citibank Choice |
| 02–080 | Originally Mandamus | Reversed/ Remanded | 1/27/04 304 B.R. 432 | Rushton, Steppes Apartments, Ltd. |
| 03–001 | Appeal | Affirmed | 2/04/04 | Rushton, Steppes Apartments, Ltd. |
| 03–002 | Appeal | Affirmed | 1/16/04 | DeOnativia, Hilton |
| 03–015 | Appeal | Affirmed | 1/7/04 303 B.R. 213 | Steppes Apartments, Ltd., Rushton |
| 03–017 | Appeal | Dismissed | 6/18/03 | Rushton, Steppes, Apartments, Ltd. Feece |
| 03–026 | Appeal | Reversed/ Remanded | 1/27/04 | Rushton, Steppes Apartments, Ltd. |
| 03–030 | Appeal | Voluntary Dismissal | 10/02/03 | Rushton, Steppes Apartments, Ltd., Feece |
| 03–059 | Construed Appeal | Affirmed | 5/06/04 | Rushton |
| 03–061 | Appeal | [Current Appeal] | | Rushton |
| 04–020 | Leave to Appeal | Denied | 3/29/04 | Rushton, Steppes Apartments, Ltd. |
| 04–040 | Leave to Appeal | Denied | 5/19/04 | Rushton, Steppes Apartments, Ltd. |

It is not the quantity of the appeals filed by Armstrong but their content that in-

**25.** This list only includes those matters where Armstrong is the debtor in the underlying bankruptcy case and does not include those matters involving Armstrong-related entities as debtors.

vites the invocation of our power under § 1651(a). While Armstrong is unquestionably entitled to appeal a final order of the bankruptcy court, he is not entitled to return to this Court repeatedly asserting issues and arguments on which this or another court has rendered a final and non-appealable decision or which may be the subject of a pending appeal in a higher tribunal. Nor is Armstrong entitled to raise and brief issues in an appeal having nothing to do with the specific order being appealed or the action of the bankruptcy court below.

Nearly every appeal filed by Armstrong has included extensive efforts to have this Court modify the Texas Modified Judgment and to permit Armstrong to pursue his constitutional arguments concerning excessive penalties.[26] Each time, this Court has held those matters to have been finally and forever disposed of by the Texas appellate courts and the Supreme Court's denial of certiorari. In nearly every appeal filed by Armstrong since the bankruptcy court's entry of the Confirmation Order on January 31, 2002, he has included extensive efforts to have this Court alter various findings and determinations contained in the Confirmation Order.

Indeed, as the trustee correctly points out in his Motion to Dismiss this appeal, most of the issues presented by Armstrong in his brief are identical to and were raised in his previous BAP appeals. The issue regarding Armstrong's post-bankruptcy petition rights and assets was also presented in BAP Nos. 02–080, 03–017, 03–026, and 03–059. The issue regarding the bankruptcy court's power to sanction Armstrong for pursuing post-bankruptcy petition rights was also presented in BAP Nos. 02–080, 03–026, and 03–017. The issue regarding the deprivation of his "constitutional, due process, property and access to the courts rights especially without jurisdiction" was also presented in BAP Nos. 02–080, 03–026, 03–059, and 03–030. The issue regarding Rushton's alleged conflicts of interest was also raised in BAP Nos. 02–080, 03–059, 03–026, and 03–030. The issue regarding the Texas Modified Judgment imposing unconstitutional excessive penalties under the Fifth and Eighth Amendments was also presented in BAP Nos. 02–080, 03–001, 03–026, and 03–059. The issue regarding the Armstrong's right to present evidence of the unconstitutional penalties was also presented in BAP Nos. 02–080 and 03–026. The argument under each of these issues in Armstrong's briefs has been virtually identical in each appeal. It appears that Armstrong has done nothing more than "cut and paste" the issues and argument from one appeal to the next.

Each time, this Court has held that it has no jurisdiction to modify the Confirmation Order because Armstrong's appeal of it is pending without stay in the Tenth Circuit. Yet, again and again, these matters are extensively briefed and documented, exposing the appellees to considerable expense and this Court to great effort. In nearly every appeal, as in this case, Armstrong's appendix is stuffed with documentation that is not pertinent to the issues on appeal, includes proceedings from other litigation and cases, and contains documents pertaining to the Texas Modified Judgment and Confirmation Order.

The BAP is a court composed of nine active bankruptcy judges and a small staff. Each member of this Court carries a full bankruptcy court caseload in addition to his or her BAP duties. Arm-

---

**26.** Armstrong's efforts to undo the Texas Modified Judgment entered in May of 1997 are strikingly similar to the debtors' efforts in *Winslow* to obtain a new trial of a ten year old state court matter. *See Winslow,* 17 F.3d at 315.

strong's abusive and repetitive filings strain the resources of this Court and warrant the institution of filing restrictions going forward. Therefore, in accordance with 28 U.S.C. § 1651(a) and 11 U.S.C. § 105(a), we impose the following restrictions commensurate with our inherent power to enter orders "necessary and appropriate" in aid of our jurisdiction.[27]

We therefore ENJOIN Armstrong from proceeding as an appellant or petitioner in an original proceeding before this Court without the representation of a licensed attorney admitted to practice in this Court, unless he first obtains permission to proceed *pro se*. To do so, Armstrong must comply with the following procedure:

1. Any notice of appeal not accompanied by a valid election or any petition for writ of mandamus or prohibition filed with this Court must be accompanied by the prescribed fee. If the fee is not paid in full at the time the notice or petition is filed, this Court will dismiss the appeal or petition without further notice.

2. Within ten (10) days after filing a notice of appeal not accompanied by a valid election, or simultaneously with filing a petition for writ of mandamus or prohibition with this Court, Armstrong must file with this Court a Memorandum and Affidavit as described below.

3. The Memorandum must include the following information:

   A. A list of all appeals or original proceedings filed with this Court in which Armstrong is a party, including the debtor's name, BAP case number, and citation, if applicable, of any decision of this Court, and a statement indicating the nature of Armstrong's involvement and the current status or disposition of the appeal or original proceeding;

   B. A list of all appeals in this Court or any other federal court in which judgment was rendered against Armstrong (including cases where the action was dismissed), and, if applicable, a list indicating the amount of any judgment or sanction rendered against him, including a statement advising the Court whether these judgments or sanctions have been paid and the date of such payment;

   C. A list advising this Court of all assessments of attorneys' fees, costs, or contempt orders against Armstrong arising out of any federal bankruptcy court, federal district court, or federal circuit court matter involving Armstrong, including a brief statement apprising the Court of the circumstances surrounding the assessment of fees, costs, or finding of contempt; and

   D. A list apprising this Court of all outstanding injunctions or filing restriction orders limiting Armstrong's access to any state or federal court, including orders or injunctions requiring Armstrong to seek leave to file matters pro se, including the name, number, and citation, if applicable, of all such orders or injunctions.

4. The Memorandum must comply with the formatting rules set forth in 10th Cir. BAP L.R. 8010–1(a) and (c). The Memorandum must not exceed 20 pages.

---

27. *See Winslow,* 17 F.3d at 315.

5. The Affidavit must recite the issues that Armstrong seeks to present, including a short description of the legal basis asserted for modifying or reversing the lower court decision, and describing with particularity the order or ruling being challenged. The affidavit must also contain the following affirmations:

A. That the claims Armstrong seeks to present have never been raised by him except in the bankruptcy court in the present case, nor finally disposed of by any federal or state court and are not, to the best of his knowledge, barred by collateral estoppel or res judicata;

B. That to the best of his knowledge, the legal arguments advanced are not frivolous or made in bad faith; that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the appeal is not interposed for any improper purpose, such as delay, or needless increase in the cost of litigation, or to avoid the valid execution of a judgment or order; and

C. That Armstrong will comply with all appellate rules of procedure and local rules of this Court.

6. The Affidavit must be notarized or must contain a statement as follows: "I declare under penalty of perjury that the foregoing is true and correct. Executed on (date)."

7. The Affidavit must comply with the formatting rules set forth in 10th Cir. BAP L.R. 8010–1(a) and (c). The Affidavit must not exceed 10 pages.

8. The Memorandum and Affidavit must be accompanied by a certificate of service showing service on all other parties to the appeal or proceeding.

If any of the above items are not properly filed, the appeal or petition will be dismissed for failure to prosecute without further notice. The time to file any of the above items will not be extended.

Unless otherwise ordered by the Court, no party to the appeal or petition may file a response to the Memorandum or Affidavit. No party may seek permission to file a response. The Clerk's Office is directed to strike any response or request to file a response that is filed in violation of this order.

The Court will enter an order stating whether Armstrong is allowed to proceed pro se. If Armstrong is not allowed to proceed pro se, the appeal will be dismissed. If Armstrong is allowed to proceed pro se, the Court will set deadlines for prosecuting the appeal or petition.

We further ENJOIN Armstrong with respect to any future filings in this Court from presenting or filing any brief, motion, application, paper or appendix in compact disc (CD) format, by electronic transmission, or by fax. Every motion, pleading, or other paper filed with this Court must be filed in paper format. The Clerk's Office is directed to strike any paper that is not filed in accordance with these requirements.

Armstrong shall have ten (10) days from the date of this order to file a written response or objection to these proposed restrictions.[28] No extension of time shall be granted. Armstrong's written response or objection shall be limited to fifteen (15)

---

28. *See Tripati,* 878 F.2d at 354.

pages. This Court's mandate is stayed pending further order of the Court.